No. 85,964

STATE OF KANSAS, *Appellee*, v. KENNETH A. GARDNER, *Appellant*.

(36 P.3d 229)

 Opinion filed December 7, 2001. 

*Steven R. Zinn*, deputy appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Sheryl L. Lidtke*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, *Arthur E. Rhodes*, assistant district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the defendant, Kenneth A. Gardner, from his convictions of premeditated first-degree murder, aggravated robbery, aggravated burglary, and arson. Gardner was given a controlling sentence of life imprisonment plus 130 months without the possibility of parole for 25 years. On March 6, 1998, this court affirmed Gardner's convictions.

Gardner filed a motion for a new trial based on newly discovered evidence and, in the alternative, ineffective assistance of counsel. The trial court denied the motion and Gardner appealed.

The underlying facts of Gardner's conviction are described in detail in *State v. Gardner*, 264 Kan. 95, 955 P.2d 1199 (1998). The facts will not be set forth again except as necessary in discussing the issue involved.

The murder took place on May 1, 1995. Counsel contends that he had learned that the State found evidence, including fragments of a bullet buried in the floor, at the scene of the crime a day or two after the murder, and that this information had never been revealed to Gardner or his counsel and was not brought out at trial.

Fragments of a bullet had been recovered by the State from the floor after having gone through a carpet, pad, and into the wooden floor. Fragments of a bullet had also been recovered from inside the victim's head at the time of the murder. The victim's uncle, who owned and lived at the residence, called the police. A detective came out, removed the fragments from the floor, cut out a portion of the carpet and pad, and recovered a couch from a dumpster because the bullet had gone through the couch. The police took possession of the couch, pad, carpet, and fragments of the bullet.

By the time Gardner filed his motion, the evidence was no longer available. The record indicates that the county attorney's office returned some of it to the victim's family and anything remaining was destroyed sometime after May 11, 1998, after Gardner's direct appeal had been completed.

Defense counsel admitted that he may have seen the bullet fragments and reports showing they had been removed. His theory was that he was not shown the items because he did not recall seeing them, but that if he did see them it was ineffective assistance of counsel not to have raised it at the trial. The detective who removed the fragments from the floor was not called as a witness, and no one testified concerning the appearance of the fragments or expressed any opinion as to what size projectile they came from. The report is of no help in establishing anything other than that bullet fragments were recovered from the floor and that there was a bullet hole in the couch. There is no evidence to connect the bullet hole in the couch to the bullet fragments found in the floor. As a result, it is sheer speculation whether the fragments found their way into the floor at the same time the victim was murdered. No one claims that the fragments touched the victim in any way.

The district attorney testified that it was his practice to allow defense counsel access to the entire prosecution file and that he initialed everything the day he received it. The district attorney stated: "I know that I did not receive any additional police reports after this case was tried." It was his opinion that the report was in the file showing that fragments of a bullet had been recovered from the floor and would have been in the file for the defense to view.

At the initial hearing, there was no evidence to show that the fragments were material to the case. Insufficient evidence was offered at the hearing to show ineffective assistance of counsel. Despite that fact, the trial judge gave Gardner additional time to investigate and prepare evidence.

A few days short of a year later, a second hearing was held on Gardner's motion for a new trial.

At the second hearing, the trial court denied the motion on several grounds, one of which was that it was not material and there was no reasonable assumption that the results of the trial would have been different had the evidence been presented by Gardner. The trial court said: "All of the arguments that I think you would have made could have been countered, as the State has mentioned, simply by them using the overwhelming circumstantial evidence they had against your client that put him at the scene, in possession of property, and behind the wheel of the truck that was the victim's."

On appeal, Gardner dropped his allegation of newly discovered evidence and relied solely on ineffective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the United States Supreme Court set forth a two-part test for ineffective assistance of counsel. Neither prong of the *Strickland* test is met under the facts of Gardner's case. That test is described in *Chamberlain v. State*, 236 Kan. 650, 694 P.2d 468 (1985); first, the defendant must show counsel's representation fell below an objective standard of reasonableness, and second, there must be a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. 236 Kan. at 656-57.

Regarding counsel's representation, the record is not clear as to whether Gardner's counsel overlooked the report on the second bullet or simply decided that the second bullet was inconsequential. It would have been reasonable for the defense attorney to make the strategic decision not to present evidence of the second bullet at trial because there is no way to tell whether it would have helped in Gardner's defense or would have instead demonstrated premeditation. As for the second part of the test, Gardner's counsel

stated, "I guess I can't really argue that it would have made a difference to the jury because I don't know what it would have revealed." There is no showing that the defendant was prejudiced by his counsel's failure to present the evidence of the second bullet, and, consequently, he was not denied effective assistance of counsel.

Affirmed.