NOT DESIGNATED FOR PUBLICATION

No. 124,065

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JIMMY NETHERLAND,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed July 22, 2022.
Affirmed.

*Matthew R. Williams*, of Topeka, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., COBLE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Jimmy Netherland was one of multiple defendants implicated in the murder of a woman during a robbery. A jury convicted Netherland of multiple felony offenses including first-degree felony murder. Following his direct appeal, Netherland filed a K.S.A. 60-1507 motion alleging, in part, that his trial counsel was ineffective. The district court held an evidentiary hearing and denied relief on the K.S.A. 60-1507 motion. Netherland appeals. After reviewing the arguments raised and the record on appeal, we affirm the district court's decision for the reasons stated below.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Netherland was convicted of first-degree felony murder, attempted aggravated robbery, aggravated robbery, conspiracy to commit aggravated robbery, aggravated battery, and attempted burglary of a motor vehicle after a six-day trial during which he was represented by attorney Linda Eckelman. The crimes were committed in July 2011. Netherland appealed, and the Kansas Supreme Court detailed the facts of the case in its decision affirming his convictions. *State v. Netherland*, 305 Kan. 167, 168, 379 P.3d 1117 (2016).

Within a year of his convictions becoming final, Netherland filed a pro se motion to correct illegal sentence pursuant to K.S.A. 22-3504 or in the alternative K.S.A. 60-1507. The district court summarily denied the motion on both K.S.A. 60-1507 and K.S.A. 22-3504 grounds. Although Netherland initially appealed this denial, he later sought dismissal of his appeal by the appellate courts on grounds not relevant to this discussion.

Netherland then filed a new pro se K.S.A. 60-1507 motion on September 29, 2017, alleging six claims of ineffective assistance of counsel against his trial counsel, Eckelman, and one claim of newly discovered evidence:

"(a) Mr. Netherland's Constitutional right to effective assistance of counsel was violated when trial counsel failed to present his alibi [defense] [of Blake Miller].
"(b) Mr. Netherland's Constitutional right to effective assistance of counsel was violated when trial counsel failed to present exculpatory evidence.
"(c) Newly discovered evidence that will prove Mr. Netherland is innocent of homicide.
"(d) Mr. Netherland's Constitutional right to effective assistance of counsel was violated when trial counsel failed to hire an expert on phone records.
"(e) Mr. Netherland's Constitutional right to effective assistance of counsel was violated when trial counsel failed to call his mother, Mrs. Thelma Netherland, and his sister, Shayonna Netherland to the stand in his [defense].

"(f) Mr. Netherland's Constitutional right to effective assistance of counsel was violated when trial counsel failed to investigate the many city cameras surrounding Topeka.

"(g) Mr. Netherland's Constitutional right to effective assistance of counsel was violated when counsel refused to withdraw from the case."

The district court held an evidentiary hearing in October 2019, during which Netherland's new appointed counsel called three witnesses and Netherland to testify. Peter Conley testified he was Eckelman's intern at the time of Netherland's trial. He stated during that time, Eckelman had a heavy caseload and was slowing down on her caseload in preparation for her retirement. He also stated that although he had recently noticed in Eckelman "a progression of some mental health issues or dementia," he did not notice anything like that, nor was he concerned about her mental competency, throughout the period of Netherland's trial.

Jessica Stoffer, a private investigator hired by Eckelman before and during Netherland's trial, also testified that Eckelman had a heavy caseload and that Eckelman had a lot of help. Stoffer stated that Eckelman had issues with her diminishing vision and some physical effects of diabetes, but Stoffer did not notice any cognitive decline during the trial period. Stoffer also testified about her investigation prior to Netherland's trial into possible alibi witnesses and her surprise when Eckelman did not present alibi or alternative suspect evidence at trial.

Eckelman testified at the 2019 evidentiary hearing that she did not have any memory or cognitive issues in 2013. She also testified that she did not provide any alternative line of defense in the Netherland trial because her strategy was to show that the State did not meet its burden of proof. However, Netherland's counsel raised during the hearing that Eckelman's current condition caused her to be suggestible, and she was offering inconsistent testimony about the evidence she provided to him. In a bench discussion with the district court, Netherland's counsel raised this issue and both parties

agreed to submit a joint stipulation of facts regarding the inconsistencies in Eckelman's testimony.

The State called Chris Biggs to testify at the evidentiary hearing. Biggs was the prosecutor during Netherland's trial, and he testified that he did not believe Eckelman's mental acuity was diminished, and he thought she was a "zealous, effective advocate" during that trial.

Netherland testified that he provided alibi information to Eckelman when they were preparing for trial and that Eckelman stated she intended to put on more than one alibi witness. Netherland claimed Eckelman planned to call his friend, Blake Miller, his mother, Thelma, and his sister, Shayonna.

The district court, having heard the testimony of witnesses and reviewing the closing briefs, found that Eckelman's performance was not deficient and that her performance did not prejudice the defense or deprive Netherland of a fair trial. The district court also denied all of Netherland's other claims—issues raised in Netherland's written K.S.A. 60-1507 motion but not in the instant appeal—and found that none of them would have changed the result of the trial. Ultimately, the district court denied Netherland's K.S.A. 60-1507 motion.

Netherland timely filed a notice of appeal, and again new counsel was appointed to represent him. After some excused delays related to new counsel's military service and other unexplained delays, Netherland's appellant's brief was untimely filed. On February 17, 2022, this court issued an order directing Netherland to submit a corrected brief that fully complied with Supreme Court Rule 6.02(a) (2022 Kan. S. Ct. R. at 35). Netherland did not file a corrected brief by the assigned due date, even after seeking and receiving an extension of time. This court issued an order on March 22, 2022, stating that "appellant's brief will be retained but any fact without a citation to the volume and page number of

4

the record on appeal will not be considered as supported by the record." Therefore, statements of facts with inadequate citations in the appellant's brief are not considered in this decision.

## THE DISTRICT COURT DID NOT ERR IN DENYING NETHERLAND'S K.S.A. 60-1507 MOTION

Netherland argues the district court erred in denying his K.S.A. 60-1507 motion. He claims on appeal that he was entitled to 60-1507 relief because Eckelman was ineffective as his trial counsel when she failed to call alibi witnesses, which resulted from her "failing mental faculties during the trial."

### Standard of Review

When, as here, the district court conducts an evidentiary hearing pursuant to a K.S.A. 60-1507 motion, the appellate court applies a mixed standard of review. We review the district court's factual findings using a substantial competent evidence standard. Substantial competent evidence is that substantive and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021); *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). When reviewing the record for substantial competent evidence, the appellate court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *Khalil-Alsalaami*, 313 Kan. at 486-87. Appellate courts review the district court's legal conclusions based on those facts applying a de novo standard of review. 313 Kan. at 486.

### Legal Standard

Netherland's appeal centers on his claims of ineffective assistance of trial counsel, which are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466

U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *Khalil-Alsalaami*, 313 Kan. at 485 (citing *Strickland*, 466 U.S. at 694).

To demonstrate deficient performance under the first prong, "'the defendant must show that defense counsel's representation fell below an objective standard of reasonableness.'" *Khalil-Alsalaami*, 313 Kan. at 485 (quoting *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Khalil-Alsalaami*, 313 Kan. 485-86 (quoting *Strickland*, 466 U.S. at 689). A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, counsel's action "'might be considered sound trial strategy.'" 313 Kan. at 486 (quoting *Strickland*, 466 U.S. at 689).

Th second prong of the *Strickland* analysis requires the defendant to establish that defense counsel's deficient performance was prejudicial. To establish such prejudice, the defendant must show "with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence." 313 Kan. at 486 (citing *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 [2012]). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court

6

hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" *Khalil-Alsalaami,* 313 Kan. at 486 (quoting *Edgar*, 294 Kan. at 838).

*Analysis*

On appeal, Netherland argues only three of the seven claims originally raised in his K.S.A. 60-1507 motion. In particular, Netherland did not address claims (b), (c), (d), and (g) of the K.S.A. 60-1507 motion during the evidentiary hearing, and he does not argue them on appeal. The claims that Netherland raised in his motion before the district court but did not brief on appeal are deemed waived and are not considered herein. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issues not briefed are deemed waived or abandoned). The three claims he does argue can be grouped into two primary concerns: trial counsel's failure to call alibi witnesses, and trial counsel's purported mental decline. Each contention is addressed separately.

### Counsel's Failure to Call Alibi Witnesses

Netherland argues, in part, that Eckelman was ineffective as counsel for failing to call his anticipated alibi witnesses at trial. In Netherland's original K.S.A. 60-1507 motion, he pinpoints in his claims (a) and (e) that Miller, Thelma, and Shayonna were the potential alibi witnesses who were not called. Netherland also testified during the evidentiary hearing that he had discussed these three possible alibi witnesses with Eckelman.

But Netherland did not present any of the purported alibi witnesses at the evidentiary hearing. Absent any testimony from the suggested witnesses, Netherland failed to provide any evidence to demonstrate how the alibi defense or the testimony establishing Netherland's whereabouts from Miller, or his family members, would have changed the outcome of the trial. In fact, Netherland stated in his K.S.A. 60-1507 motion

7

only that the testimony of his mother and sister "could have" impeached the State's witnesses regarding his whereabouts on the night of the crime, rather than definitively presenting an alibi defense. His brief also admits it is "disputed whether Thelma and [Shayonna] Netherland's testimony would be hearsay or admissible . . . ." Mere speculation that a witness' testimony could have possibly changed the outcome of the jury verdict is not sufficient to satisfy the prejudice prong of the *Strickland* test. See *Mullins v. State*, 30 Kan. App. 2d 711, 719, 46 P.3d 1222 (2002) (citing *State v. Gardner*, 272 Kan. 706, 708, 36 P.3d 229 [2001]); see also *State v. Morgan*, No. 109,099, 2014 WL 5609935, at *8 (Kan. App. 2014) (unpublished opinion) (applying second *Strickland* prong and finding this court cannot base judgment on speculation).

Contrary to Netherland's suggested assumption, the district court noted the State's response to Netherland's notice of alibi during trial and its motion in limine regarding third party evidence could have deterred Eckelman from presenting Miller as an alibi witness. In fact, Netherland's appellate brief admits "[t]here is some evidence to support why [c]ounsel might make a strategic decision not to call Blake Miller to testify." Also notably, Stoffer, Netherland's witness who briefly interacted with Miller, was unable to present factual evidence and provided only speculative testimony that Miller's testimony might have provided an alibi defense.

Netherland also contends in his brief that because "there is not a way to know why trial counsel did not call alibi witnesses which would have contradicted the State's witnesses it *must be assumed* that the outcome of the case would have been different if the alibi witnesses had been called." (Emphasis added.) But this is an incorrect statement of Netherland's legal burden. He bears the burden of proving prejudice, and "'[w]hen there are blanks in the record, appellate courts do not fill them in by making assumptions favoring the party claiming error in the district court.'" *Morgan*, 2014 WL 5609935, at *8 (quoting *Harman v. State*, No. 108,478, 2013 WL 3792407, at *1 [Kan. App. 2013] [unpublished opinion]).

8

Based on these facts, the district court held: "Netherland has not presented any evidence regarding testimony of his 'alibi' witnesses which would convince this court that the outcome would have been different if Eckelman had called the alibi witnesses." This court agrees.

The Supreme Court emphasized in *Strickland* the significance of the prejudice prong of the ineffective assistance of counsel test by stating that such claim "could be disposed of solely on that ground if the defendant failed to establish that he or she suffered prejudice." *Edgar*, 294 Kan. at 843. In *Strickland*, the Supreme Court held:

"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." 466 U.S. at 697.

Therefore, Netherland's failure to demonstrate prejudice is itself sufficient for this court to decide Netherland's claim regarding the alibi witnesses.

Even if this were not so, Netherland also fails to support his allegation that Eckelman's performance fell below an objective standard of reasonableness. Her decision to not call the alibi witnesses must be given a "heavy measure of deference" and "directly assessed for reasonableness in all circumstances." See *Strickland*, 466 U.S. at 691. Because Netherland concedes Eckelman may have decided not to call Miller as a trial

9

strategy and presented no evidence of how his family witnesses' testimony may have affected the case, Netherland simply failed to overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. Netherland's claims that Eckelman's failure to call alibi witnesses constitutes ineffective assistance of counsel thus misses the mark under both prongs of the *Strickland* analysis.

*Counsel's Alleged Cognitive Decline*

Netherland also claims that Eckelman was ineffective because she was suffering from declining mental cognition during his trial. Yet, Netherland has presented no evidence in the record on appeal showing that Eckelman was experiencing a decline in her mental cognition during his trial. On the contrary, the witnesses' testimony extracted during Netherland's K.S.A. 60-1507 hearing largely noted Eckelman's performance as trial counsel in 2013 appeared generally unaltered from the witnesses' observances of her usual performance.

Throughout his appellate brief, Netherland seeks to make phantom connections between Eckelman's condition during the 2019 evidentiary hearing and her mental state during the period of Netherland's 2013 trial, using only unsubstantiated suggestions. For example, Netherland proposes Conley's testimony supports that Eckelman was "not taking care of her diabetes" during the trial and that the side effects of diabetes somehow affected her mental cognition. But the transcript shows that Conley specifically testified that he did not know whether her diabetes played a role in the slowing of her practice and that he "wouldn't say [he] noticed" any signs of Eckelman's alleged cognitive impairment during Netherland's trial. Conley's testimony clearly differentiated between Eckelman's current cognitive condition and her characteristics in 2013, and Conley had no concerns regarding dementia at the time of the 2013 trial.

Netherland also claims that Stoffer testified Eckelman's diabetes affected her performance during the trial period. But again, the hearing transcript reflects that Stoffer's testimony was in fact contrary to Netherland's claims, and rather it shows Stoffer stating she did not notice any cognitive decline in Eckelman—only that Eckelman at times had to deal with the side effects of diabetes, but "she appeared to have it under control." Again, Netherland makes unsubstantiated assumptions, but he fails to provide any actual evidence supporting the presumption that Eckelman was suffering any mental cognitive decline which would have rendered her 2013 performance deficient.

The district court found it apparent from Eckelman's 2019 testimony that she had "mental decline due to health issues." Yet, the district court found that Eckelman did not suffer from mental decline or deficiencies at the time she represented Netherland at trial. The district judge who presided over the evidentiary hearing also presided over the trial and stated in her decision on the 60-1507 motion that she "observed the diligence and tenacity of Eckelman, both [during] pretrial and during the trial. [The] court was not aware of any mental issues or health issues that affected Eckelman's performance during her representation of Netherland." Likewise, in Netherland's direct appeal following conviction, the Kansas Supreme Court characterized Eckelman's defense as "aggressively challenged" specific evidence submitted by the State, and she "aggressively attack[ed the] weaknesses in the State's case." *Netherland*, 305 Kan. at 172, 178.

As the district court found in its decision, Eckelman's mental health issues at the time of the evidentiary hearing did render it difficult to determine the trial strategy she employed in defending Netherland during trial. But, it is also equally problematic to accept on its face Netherland's suggested fiction:  that because no other explanation could be given for Eckelman's actions, it must solely be attributable to the decline of Eckelman's mental faculties. Conversely to Netherland's suggestions, the record on appeal shows that throughout the evidentiary hearing, various legal reasons were proffered by the State as to why a reasonable defense counsel would not have called the

11

witnesses during a criminal trial. And again, Netherland concedes that"[i]t is reasonable to presume [Eckelman] determined Miller would not benefit the defense and decided not to call him as a witness." Netherland also admits it is "disputed whether Thelma and [Shayonna] Netherland's testimony would be hearsay or admissible . . . ." As noted above, Netherland simply provides no evidence to support his theory that Eckelmen's decision to withhold alibi witnesses was a result of some nebulous mental condition.

Adhering to *Strickland*, Eckelman's decision to not call the witnesses provided by Netherland should be given a "heavy measure of deference" and "directly assessed for reasonableness in all circumstances." See 466 U.S. at 691. Because Netherland did not present evidence to support his claim that Eckelman's performance was unreasonable under the circumstances, he fails to overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy.

Therefore, because Netherland fails to support his claim that Eckelman's performance was deficient due to her alleged deteriorated mental capacities, Netherland fails under the first prong of the *Strickland* test. Consequently, the second prong of the test need not be explored by this court. As a result, Netherland did not meet his burden of establishing ineffective assistance of counsel due to alleged declining mental acuity.

The district court correctly found Netherland failed to show that Eckelman's representation of Netherland fell below an objective standard of reasonableness or that Eckelman provided inefficient assistance of counsel because of her declining mental capacity. The district court's findings are supported by substantial competent evidence, and it did not err in denying Netherland's K.S.A. 60-1507 motion.

Affirmed.